UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CORLOGIX CORPORATION and THEODORE WILLIAM RUSSELL    Plaintiffs <br> V. <br><br> ASHER LEVITSKY, P.C. and ASHER S. LEVITSKY    Defendants | CIVIL ACTION NO.: 3:00 CV 1357 (AWT) Lead Case |

CORLOGIX CORPORATION and
THEODORE WILLIAM RUSSELL
    Plaintiffs
V.

ASHER LEVITSKY, P.C. and
ASHER S. LEVITSKY
    Defendants

:    CIVIL ACTION NO.:
:    3:00 CV 1357 (AWT)
:    Lead Case

JOHN J. O'NEIL, TRUSTEE and
THEODORE WILLIAM RUSSELL,
    Plaintiffs,
V.

ASHER S. LEVITSKY,
ASHER S. LEVITSKY P.C.,
ESANU KATSKY KORINS & SIGER, LLP,
RANDOLPH AMENGUAL,
STEPHEN D. BRODIE,
DAVID L. KATSKY,
ADRIENNE B. KOCH,
EUGENE V. KOKOT,
ROY M. KORINS,
DENNIS C. KREIGER,
ANDREW B. LEVINE,
THOMAS M. LOPEZ,
GREGORY K. MARKS,
JEFFREY M. SIGER,
STEPHEN J. SWIATKIEWICZ,
MERYL L. UNGER,
MARCY WACHTEL,
MARK WALFISH,
JOEL S. WEISS, and
ELIAS M. ZUCKERMAN
    Defendants.

:    CIVIL ACTION NO.
:    3:02 CV 1611(AWT)
:
:    Bnkr. No. 01-22397 (RLK)
:
:    Adv. Pro. No. 02-02010 (RLK)
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:    OCTOBER 29, 2004
:

### PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs, Corlogix Corporation and Theodore William Russell, and the plaintiffs, John

O'Neil, Jr., Trustee, and Theodore William Russell (hereinafter individually "Russell" and

collectively referred to as "plaintiffs"), file this supplemental memorandum in further opposition to the defendants' separate motions to dismiss.

A.    *The Plaintiffs Have Established Personal Jurisdiction.*

In their argument, defendants, citing Franceskino v. Womack, No. 01-1835, at 4 (D.Conn. Jan. 25, 2002) contend that Ball v. Metallurcie Hoboken-Overoelt, 902 F. 2d 194, 197 (2d Cir. 1990), cert. denied, 112 L. Ed. 2d, 116, 111 S. Ct. 150 (1990) requires a standard more stringent than a prima facie showing for jurisdiction. Connecticut courts, however, interpret Ball to require the more stringent standard following an evidentiary hearing is held. Jones v. Cosmetique, Inc., No. 03CV417, at 2 (D.Conn October 18, 2004) (attached). In light of the fact that an evidentiary hearing has not been held in this matter, the good faith allegations in the pleadings are sufficient to meet plaintiffs' prima facie burden. Notwithstanding this, plaintiffs have met the higher standard of Ball by both alleging and providing supporting evidence as follows:

Exhibit A    E-mail entering Connecticut concerning a Connecticut securities filing which defendants failed to prepare and which resulted in the Connecticut Department of Banking placing Corlogix in receivership . . ."We will prepare the documentation for NY & CT" (Exhibit A to Memorandum in Opposition)

Exhibit B    Invoices entering Connecticut "Professional services rendered . . . with various matters relating to ... the proposed issuance of . . .three-year notes, and regulatory matters relating thereto . . . preparation of comments on offering documents and advise . . .

Exhibit C    Connecticut Cease & Desist Order, Sec. IV "Corlogic also offered and sold the 3 Year Notes from Connecticut . . . Such securities were not registered with the State of Connecticut . . . the offer and sale of such securities absent registration was in

violation of Section 36b-16 . . . Corlogic, in connection with the offer and sale of securities, omitted to state material facts necessary in order to make the statements made . . . not misleading . . . in violation of Section 36b-4(a)(2) . . ."

Exhibit D    Verified Complaint by CT Banking Commissioner "The offer and sale of . . . the 3 Year Notes by Corlogix without registration under the Act violated Conn. Gen. Stat. Sec. 36b-16.  8.  Corlogix violated Conn. Gen. Stat. Sec. 36b-4(a)(2) in connection with the offer and sale of securities by omitting to state the following material facts.

Exhibit E    E-mail entering Connecticut "we are working on this. One of my colleagues, Eric Kamisher, is working with me on the PPM [Private Placement Memorandum] . . ."

Exhibit F    Draft letter to Belgium Surety entering Connecticut which was approved by defendants: "Our New York law firm, which is well experienced in securities matters, is working with us in preparing a financing memorandum for completion by mid-July . . ."

Exhibit G    Esanu/Levitsky letter entering Connecticut soliciting venture capital from Culliane & Donnelly Venture Partners, L.P. 24 Lewis Street Hartford, Connecticut 06106.

These Exhibits are entirely consistent with the allegations contained in the complaint and establish that plaintiffs have met the higher standard in <u>Ball</u> notwithstanding the necessity to make only a prima facie showing at this stage in the litigation.

B.    <u>*The Agreement Between the Parties Was Made and To Be Performed in Connecticut.*</u>

These Exhibits further establish that the contract was made and to be performed in Connecticut, and that the claims arise out of this alleged contract.  As the Court stated in <u>Cosmetique</u>, C.G.S. Sec. 33-929(f)(1) does:

> not require a finding that [defendant] was transacting business in the state" and
> it was sufficient that "plaintiffs have alleged and provided sworn affidavit
> testimony to the effect that they entered into a contract with [defendant] in
> Connecticut, which was to be performed substantially in Connecticut, and that
> they received one commission payment in Connecticut pursuant to this
> agreement. Cosmetique, at 9.

Likewise, Russell and Corlogix' payment of the initial retainer and subsequent payment of invoices

from Connecticut (Affidavit of Russell at p.2) established a contract made in Connecticut. Further,

the contract was to be performed in Connecticut by defendants' agreement to file with the

Connecticut Regulators. "We will prepare the documentation for NY & CT". Further, Connecticut

Regulators found that a Connecticut filing was necessary to comply with the Connecticut Acts.

"[T]he offer and sale of such securities absent registration was in violation of Section 36b-16".

C.    *Due Process Considerations Support Personal Jurisdiction.*

In Cosmetique, the Court found that due process was met because:

> Plaintiffs have alleged far more than contractual arrangements by Cosmetique
> with residents of Connecticut. The Brylane deal was the second brokerage
> arrangement between Cosmetique and Jones in Connecticut.    During the
> negotiation stage, Cosmetique made numerous phone calls to Jones in
> Connecticut and sent numerous e-mails to Jones in Connecticut. The terms of the
> work by plaintiffs would take place in Connecticut. Several employees and
> officers of Cosmetique traveled to Connecticut for meetings with Jones.
> Additionally, Cosmetique advertises its products on a national website which
> reaches customers in Connecticut. Cosmetique, at 13.

Likewise, the plaintiffs have alleged far more than a contract with a Connecticut resident.  The

securities filing that was to take place in Connecticut was not the first between plaintiffs and the

defendants. It is also alleged that the plaintiffs and the defendants made numerous telephone calls

to and from Connecticut in addition to sending numerous e-mails and facsimile transmissions to and

from Connecticut.  Further, the securities filing by the defendants would take place in Connecticut

and the attorney responsible for reviewing and approving the Private Placement Memorandum lived

in Connecticut. As with Cosmetique, the defendants advertise on a national website which reaches it's Connecticut clients.

D.    *Venue is Proper.*

Contrary to the defendants' claims, venue is proper in Connecticut. In Cosmetique, the court found that because subject matter jurisdiction was invoked based on diversity of citizenship and because the events or omissions giving rise to the claim occurred in Connecticut, venue properly lies in this district. Cosmetique at 15. Similarly, jurisdiction here is invoked based on diversity of citizenship (and nationwide jurisdiction of the bankruptcy court) and because of the failure to file in Connecticut). Accordingly, venue properly lies in Connecticut.

For these reasons and the reasons set forth in its memorandum in opposition, the defendants' motions to dismiss should be denied. In the alternative, the plaintiffs should be afforded the opportunity to dismiss the Lead Action and to proceed under the Adversary Proceeding.

PLAINTIFFS,

By:    _____

Eliot B. Gersten, Esq.ct05213
John J. Robaczynski, Esq.ct15636
GERSTEN & CLIFFORD
214 Main Street
Hartford, CT 06106
(860) 527-7044
Their Attorneys

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROBERT HAYDON JONES & ASSOCIATES, LLC,
and ROBERT HAYDON JONES,

     Plaintiffs,

     vs.                    No. 3:04CV417(WWE)

COSMETIQUE, INC.,

     Defendant.
_____/

## Ruling on Defendant's Motion to Dismiss [Doc. # 11]

Plaintiffs, Robert Haydon Jones & Associates, LLC ("RHJA"), and Robert Haydon Jones ("Jones"), have filed this diversity action seeking declaratory and monetary relief against defendant, Cosmetique, Inc., arising out of its failure to pay plaintiffs commissions on a deal that they brokered between Cosmetique and Brylane Corporation, which is not a party to this litigation.[1]   Defendant now moves this Court to dismiss this case pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction and pursuant to Rule 12(b)(3), Fed. R. Civ. P., because of improper venue. Alternatively, defendant asks this Court to transfer this case

_____

[1]   Plaintiffs have asserted claims for breach of contract, breach of contract implied in fact, promissory estoppel, quantum meruit, unjust enrichment, interference with prospective advantage, and violation of Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq.

1

to the Northern District of Illinois.  The request for
transfer has already been ruled on and denied.  For the
reasons set forth below, defendant's motion to dismiss will
also be denied.

### Discussion

## I. Standard of Review

When a defendant challenges personal jurisdiction by a
motion to dismiss, the burden is on the plaintiff to prove
personal jurisdiction.  Metropolitan Life Insur. Co. v.
Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir.), cert.
denied, 519 U.S. 1007 (1996).  Because the parties have not
yet engaged in jurisdictional discovery and because an
evidentiary hearing has not been held, plaintiff is required
only to make a prima facie showing that personal jurisdiction
exists.  See A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d
76, 79 (2d Cir. 1993); Ball v. Metallurgie Hoboken-Overpelt,
S.A., 902 F.2d 194, 196 (2d Cir.), cert. denied, 498 U.S. 854
(1990).  At this preliminary stage in the litigation,
plaintiff's prima facie burden may be met solely by good faith
allegations in the pleadings.  Metropolitan Life, 84 F.3d at
566; Ball, 902 F.2d at 197.  Additionally, the Court is
required to construe all allegations and to resolve all doubts
in plaintiff's favor.  Whitaker v. American Telecasting, Inc.,

2

261 F.3d 196, 208 (2d Cir. 2001).

## II.  Factual Allegations[2]

Plaintiff RHJA is a Connecticut limited liability company, of which Jones, a resident of Westport, Connecticut, is the principal and owner.  RHJA is a direct response marketing agency that assists clients in planning and managing direct response advertising and branding programs and marketing launches.  Defendant, Cosmetique, is an Illinois corporation with its principal place of business in Vernon Hills, Illinois.  Cosmetique is a direct mail beauty club that sells cosmetics and fragrances to its members at discounted prices.  It solicits members via introductory offers in national media and sells cosmetic products to its members via an interactive website, www.cosmetique.com.

Plaintiff Jones alleges that in 2002 Cosmetique used his services to broker a deal with Reader's Digest, the terms of which were memorialized in a letter sent to Jones by Cosmetique.  The following year, one of the Reader's Digest executives, Milton Pappas, became an executive with Brylane, a Delaware corporation, which has its principal place of

---

[2]  These factual allegations are taken from plaintiffs' complaint and the affidavit of Jones submitted in opposition to the motion to dismiss.

3

business in New York, New York.  Brylane is a catalog retailer specializing in value-priced women's apparel and home furnishings.  In March 2003, Pappas contacted Jones about brokering a deal between Cosmetique and Brylane.  Jones called Anthony Abate, the Chief Marketing Officer at Cosmetique, with whom Jones had worked on the Reader's Digest deal, to relay to him Brylane's interest in telemarketing Cosmetique's products.  Abate authorized Jones to negotiate a potential telemarketing arrangement between Brylane and Cosmetique ("the Brylane deal").

In his affidavit, Jones states that the negotiations of the Brylane deal took place in Connecticut.  Pursuant to this arrangement, Cosmetique would allow Brylane to offer Cosmetique's products for sale to Brylane customers in exchange for Cosmetique's receiving forty percent (40%) of the net revenues from such sales.  According to Jones, Cosmetique agreed to pay Jones and RHJA a commission of ten percent (10%) of net revenues.  Jones has provided a copy of an unsigned letter that was sent to him in Connecticut by Cosmetique memorializing this agreement.  This letter is strikingly similar to the letter memorializing his commission arrangement with Cosmetique on the Reader's Digest deal.

According to Jones, he made only three visits to Illinois

4

with regard to the Brylane deal.  There were also numerous
telephone calls and e-mails between Jones in Connecticut and
Cosmetique in Illinois during the negotiation phase.

After an agreement had been reached between Brylane and
Cosmetique, Jones states that he worked with both parties to
implement and structure the marketing of Cosmetique's
products, including drafting and editing scripts for Brylane
marketers to use in soliciting sales.  During the negotiations
and implementation of the Brylane deal, Jones met in his
Connecticut office on at least three occasions with officers
and executives of Cosmetique.  Jones states that he spent
hundreds of hours on the Brylane deal, primarily on the
telephone from his Connecticut office.  In addition to
telephone calls that he received in Connecticut from
Cosmetique, he received at least twenty-five (25) e-mails from
Abate and twenty (20) e-mails from Patti Venturini, another
Cosmetique employee involved with the Brylane deal.

In the summer of 2003, following a successful test-
marketing period, Brylane launched its sale of Cosmetique's
products.  Aside from one payment of $28,310.45, Cosmetique
has refused to pay Jones or RHJA commissions allegedly due and
owing, despite the success of the Brylane deal.  Jones states
that the letter Cosmetique sent him regarding commissions

embodied the essential terms of their oral agreement.  The
only change requested by Jones was that RHJA be paid monthly
instead of quarterly.  After Jones requested this change, he
sent the letter back to Abate, who assured him that this would
not be a problem.  Thereafter, others at Cosmetique supplanted
Abate in dealing with Jones and revised the letter to add
restrictions and limitations that had never been part of
plaintiffs' agreement with Cosmetique.

On February 27, 2004, Cosmetique filed a declaratory
judgment action in Illinois state court against RHJA and
Jones, which was subsequently removed to federal court based
on the complete diversity of citizenship of the parties.  On
March 17, 2004, plaintiffs filed this action against
Cosmetique in this Court.  The Illinois action was
subsequently transferred to this Court and consolidated with
the instant case.  A motion to dismiss filed by Jones and RHJA
on grounds of lack of personal jurisdiction and improper venue
was denied by the Illinois District Court, see Note 4 infra,
and, as noted above, this Court has denied Jones and RHJA's
request to transfer the case back to Illinois.

**III.  Personal Jurisdictional**

Because this Court's jurisdiction is invoked by plaintiff
based upon diversity of citizenship of the parties, 28 U.S.C.

6

§ 1332, the Court must apply the forum state's personal
jurisdiction rules. <u>Bensusan Restaurant Corp. v. King</u>, 126
F.3d 25, 27 (2d Cir. 1997).

In analyzing the issue of personal jurisdiction, this
Court must engage in a two-step process. First, the Court
must determine whether any of Connecticut's long-arm statutes
allow service of process on the defendant and, second, whether
the exercise of personal jurisdiction over defendant comports
with the due process requirements of fair play and substantial
justice. <u>International Shoe Co. v. Washington</u>, 326 U.S. 310,
316 (1945); <u>H. Lewis Packaging, LLC v. Spectrum Plastics,
Inc.</u>, 296 F. Supp. 2d 234, 238 (D. Conn. 2003).

**A.  Connecticut's Long-Arm Statute**

Connecticut's long-arm statute applicable to foreign
corporations, Conn. Gen. Stat. § 33-929, provides in relevant
part:

> (e) Every corporation which transacts business in
> this state in violation of section 33-920 shall be
> subject to suit in this state upon any cause of
> action arising out of such business.
>
> (f)  Every foreign corporation shall be subject to
> suit in this state, by a resident of this state or
> by a person having a usual place of business in this
> state, whether or not such foreign corporation is
> transacting or has transacted business in this state
> and whether or not it is engaged exclusively in
> interstate or foreign commerce, on any cause of
> action arising as follows: (1) Out of any contract

7

made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Citing subsection (e),[3] defendant argues that it was not transacting business within the state, as that term has been interpreted and applied by the courts in Connecticut.  See Goudis v. American Currency Trading Corp., 233 F. Supp. 2d 330, 334 (D. Conn. 2002); Chemical Trading, Inc. v. Manufacture de Produits Chimiques de Tournan, 870 F. Supp. 21, 23 (D. Conn. 1994); Eljam Mason Supply, Inc. v. Donnelly Brick Co., 152 Conn. 483, 486 (1965); Alfred M. Best Co. v. Goldstein, 124 Conn. 597, 603 (1938).  Jones and RHJA, however, rely on subsection (f)(1), which subjects foreign

---

[3]  Section 33-929(e) subjects a foreign corporation to suit in Connecticut on any cause of action arising out of business it transacted in the state if it did so in the absence of a valid certificate of authority from the Secretary of State.  Conn. Gen. Stat. § 33-920(a).  Neither side claims that Cosmetique holds a certificate of authority to do business in Connecticut.

corporations to jurisdiction in the state of Connecticut on any cause of action arising out of any contract made in this state or to be performed in this state. Significantly, subsection (f)(1) does not require a finding that Cosmetique was transacting business in the state.

Although Cosmetique disputes that a contract was entered into with Jones and RHJA, plaintiffs have alleged and provided sworn affidavit testimony to the effect that they entered into a contract with Cosmetique in Connecticut, which was to be performed substantially in Connecticut, and that they received one commission payment in Connecticut pursuant to this agreement. See Clemco Corp. v. Frantz Mfg. Co., 609 F. Supp. 56, 57 (D. Conn. 1985) (rejecting the limited construction of the "to be performed in this state" language in the predecessor to § 33-929, which considered only performance by the party over whom jurisdiction was sought).

Accepting all of plaintiffs' factual allegations as true and resolving all discrepancies in plaintiffs' favor, as the Court is required to do at this preliminary stage of the litigation, the Court finds that plaintiffs have carried their prima facie burden of alleging that a contract was formed in Connecticut to be performed in Connecticut, and that their claims arise out of this alleged contract. Thus, Cosmetique

9

is amenable to suit under Connecticut's long-arm statute,
Conn. Gen. Stat. § 33-929(f).

### B.   Fourteenth Amendment Due Process

The next step is for the Court to determine whether the
exercise of such jurisdiction violates the due process clause
of the Fourteenth Amendment.  Agency Rent A Car Systems, Inc.
v. Grand Rent A Car Corp., 98 F.3d 25, 32 (2d Cir. 1996).  In
making this determination, the Court must first decide whether
the defendant has sufficient minimum contacts with the forum
state to satisfy constitutional due process requirements.[4]  If
so, the second question is whether the assertion of
jurisdiction comports with the traditional notions of fair
play and substantial justice.  Metropolitan Life, 84 F.3d at

-------------------------

[4]    In Cosmetique, Inc. v. Robert Haydon Jones & Assocs.,
the declaratory judgment action which was pending in the
Northern District of Illinois before being transferred to
Connecticut, Judge Lindberg, in ruling on a motion to dismiss,
was faced with the question of whether RHJA and Jones had
sufficient minimum contacts with the state of Illinois to
satisfy due process requirements.  The Court held that
Cosmetique's declaratory judgment action related to and arose
out of RHJA's and Jones' contacts with Illinois.  The Court
found that Jones' initial phone call to Illinois to initiate a
business relationship with Cosmetique, his subsequent visits
to Illinois for negotiations with Cosmetique, and his repeated
phone calls and e-mails to Cosmetique were sufficient to
satisfy the minimum contacts test.  (Slip Op. at 4-6).  In the
instant case, this Court is confronted with the "flip-side" of
this question, looking at it in terms of Cosmetique's contacts
with the state of Connecticut, as opposed to Jones' and RHJA's
contacts with Illinois.

567-68 (citing <u>International Shoe</u>, 326 U.S. at 316); <u>U.S.
Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.</u>, 241 F.3d 135,
152 (2d Cir. 2001).

### 1. Minimum Contacts

Where the claim arises out of, or relates to, the
defendant's contacts with the forum, i.e., specific
jurisdiction, minimum contacts will be found if the defendant
purposefully availed itself of the privilege of doing business
in the forum and could foresee being haled into court there.
<u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472-76 (1985).
However, where the claim does not relate to the defendant's
contacts with the forum, a court may assert general
jurisdiction over that nonresident defendant only where the
defendant's contacts with the forum were continuous and
systematic. <u>U.S. Titan</u>, 241 F.3d at 152; <u>see also</u>
<u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S.
408, 415-16 (1984).

Here, because plaintiffs' claims relate to or arise out
of the contract with Cosmetique, <u>see Clemco Corp.</u>, 609 F.
Supp. at 58, the Court may assert specific jurisdiction over
Cosmetique based on a finding that Cosmetique "purposefully
directed" its activities at forum residents. <u>Burger King</u>, 471
U.S. at 473. The "constitutional touchstone [is] whether the

11

defendant purposefully established 'minimum contact' in the forum State." Burger King, 471 U.S. at 474 (internal citations omitted).  The purposeful availment requirement is satisfied if the defendant's contacts with the forum "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum" such that it "should reasonably anticipate being haled into court there." Burger King, 471 U.S. at 474-75 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  Contacts that are merely "random, fortuitous, or attenuated" do not satisfy the due process requirements.  Burger King, 471 U.S. at 475. Moreover, the mere fact that defendant has entered into a contract with a resident of Connecticut, without more, will not in and of itself satisfy the minimum contacts requirement. H. Lewis Packaging, 296 F. Supp. 2d at 239.  Instead, the courts have looked to the quality and nature of the defendant's relationship with the forum state.  H. Lewis Packaging, 296 F. Supp. 2d at 239 (citing Burger King, 471 U.S. at 480).

Plaintiffs have alleged far more than just a contractual arrangement by Cosmetique with residents of Connecticut. The Brylane deal was the second brokerage arrangement between Cosmetique and Jones in Connecticut.  During the negotiation

stage, Cosmetique made numerous phone calls to Jones in
Connecticut and sent numerous e-mails to Jones in Connecticut.
A written contract was mailed to Jones in Connecticut. The
terms of the brokerage arrangement contemplated that much of
the work by plaintiffs would take place in Connecticut.
Several employees and officers of Cosmetique traveled to
Connecticut for meetings with Jones.  Additionally, Cosmetique
advertises its products on a national website which reaches
customers in Connecticut.  Thus, considering the totality of
the circumstances, the Court finds that plaintiffs have
sufficiently alleged minimum contacts with the state of
Connecticut by Cosmetique to satisfy the minimum contacts due
process requirements of the Fourteenth Amendment.  See Milne
v. Catuogno Court Reporting Servs., Inc., 239 F. Supp. 2d 195,
203 (D. Conn. 2002) (holding that the minimum contacts inquiry
rests upon the totality of the circumstances rather than any
mechanical criteria).

## 2.  Fair Play and Substantial Justice

Because the threshold requirement of minimum contacts has
been met, the Court must now consider whether the assertion of
personal jurisdiction would comport with "fair play and
substantial justice."  International Shoe, 326 U.S. at 320;
see Metropolitan Life, 84 F.3d at 568; H. Lewis Packaging, 296

13

F. Supp. 2d at 239, 240.  The burden is on the defendant to make a compelling showing that the exercise of jurisdiction is unreasonable under the circumstances.  <u>Metropolitan Life</u>, 84 F.3d at 568.  The Court may consider the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies.  <u>Burger King</u>, 471 U.S at 477 (internal citations and quotation marks omitted).

The Court finds that it is not fundamentally unfair to require Cosmetique to come to Connecticut to defend itself in this lawsuit.  Cosmetique has not shown that requiring it to litigate in Connecticut would be so burdensome, costly, or inconvenient that it would effectively be deprived of its day in court.  Connecticut has a strong interest in adjudicating this dispute and, obviously, plaintiffs have a significant interest in obtaining convenient and effective relief. Therefore, the Court finds that the exercise of personal jurisdiction over defendant will not violate the due process requirements of the Fourteenth Amendment.

**IV.  Improper Venue**

14

Cosmetique also moves to dismiss this action on the basis of improper venue, pursuant to Rule 12(b)(3), Fed. R. Civ. P. Because the Court's subject matter jurisdiction is invoked based on the diversity of citizenship of the parties, 28 U.S.C. § 1332, the relevant venue provision is 28 U.S.C. § 1391(a), which provides in relevant part that an action may be brought "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Here, as discussed above, a substantial part of the events giving rise to plaintiffs' claim for unpaid brokerage commissions occurred in the District of Connecticut. Accordingly, the Court finds that venue properly lies in this district.

### **Conclusion**

For the reasons set forth above, defendant's motion to dismiss [Doc. # 11] on grounds of lack of personal jurisdiction and improper venue is DENIED. This Court has previously denied defendant's motion for a change of venue.

SO ORDERED, this 18th day of October, 2004, at Bridgeport, Connecticut.

        __/s/_____
        WARREN W. EGINTON,
        Senior United States District Judge

15

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, via regular U.S. Mail, postage prepaid, on October 29, 2004 to all counsel and pro se parties of record:

David J. Robertson, Esq.
Bai, Pollock, Blueweiss & Mulcahey, P.C.
10 Middle Street
Bridgeport, CT 06604
*Tel: 203-366-7991*
*Fax: 203-366-4723*

Denise R. Polivy, Esq.
Baker O'Sullivan & Bliss
100 Great Meadow Road, #100
Wethersfield, CT 06109-2371
*Tel: 860-258-1993*
*Fax:860-258-1991*

John J. O'Neil, Jr., Trustee
Francis, O'Neil & Del Piano, LLC
255 Main Street
Hartford, CT 06106
*Tel: 860-527-3271*
*Fax: 860-527-2584*

Thomas Boscarino, Esq.
Boatman, Boscarino, Grasso & Twachtman
628 Hebron Avenue
Glastonbury, CT 06033
*Tel: 860-659-5657*
*Fax: 860-657-4549*

John J. Robacynski, Esq.