UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CORLOGIX CORPORATION and <br> THEODORE WILLIAM RUSSELL <br> Plaintiffs <br> V. <br><br> ASHER LEVITSKY, P.C. and <br> ASHER S. LEVITSKY <br> Defendants | CIVIL ACTION NO.: <br> 3:00 CV 1357 (AWT) <br> Lead Case |
| JOHN J. O'NEIL, TRUSTEE and <br> THEODORE WILLIAM RUSSELL, <br> Plaintiffs, <br> V. <br><br> ASHER S. LEVITSKY, <br> ASHER S. LEVITSKY P.C., <br> ESANU KATSKY KORINS & SIGER, LLP, <br> RANDOLPH AMENGUAL, <br> STEPHEN D. BRODIE, <br> DAVID L. KATSKY, <br> ADRIENNE B. KOCH, <br> EUGENE V. KOKOT, <br> ROY M. KORINS, <br> DENNIS C. KREIGER, <br> ANDREW B. LEVINE, <br> THOMAS M. LOPEZ, <br> GREGORY K. MARKS, <br> JEFFREY M. SIGER, <br> STEPHEN J. SWIATKIEWICZ, <br> MERYL L. UNGER, <br> MARCY WACHTEL, <br> MARK WALFISH, <br> JOEL S. WEISS, and <br> ELIAS M. ZUCKERMAN <br> Defendants. | CIVIL ACTION NO. <br> 3:02 CV 1611(AWT) <br><br> Bnkr. No. 01-22397(RLK) <br><br> Adv. Pr. No. 02-02010(RLK) <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> JANUARY 3, 2006 |

**JOINT TRIAL MEMORANDUM**

Pursuant to the Court's Trial Memorandum Order dated October 27, 2005, the Plaintiffs and the Defendants, by undersigned counsel, hereby submit the following Joint Trial Memorandum.

1. Trial Counsel

Plaintiffs: Eliot B. Gersten & John J. Robacynski, Gersten & Clifford, 214 Main Street, Hartford, CT 06106. Tel: (860) 527-7044; Fax: (860) 527-4968; e-mail: eliotg@gersten-clifford.com , johnr@gersten-clifford.com

Defendants: David J. Robertson, Bai, Pollock, Blueweiss & Mulcahey, P.C., 1 Corporate Drive Shelton, CT 06484. Tel: (203) 925-8100; Fax: 203-925-8101; e-mail drobertson@baipollock.com

2. Jurisdiction

a..    Subject Matter Jurisdiction
The Court possesses jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. Sections 1334 (a) and (b) and Sections 157 (a) and (b) as the reference to the bankruptcy court has been withdrawn as set forth in the Order dated September 11, 2002.

b.    Personal Jurisdiction
The Court possesses personal jurisdiction over all the defendants because of the nationwide jurisdiction of the bankruptcy court has been withdrawn to this court as set forth in the Order dated September 11, 2002.

3. Jury/ Non-Jury
This matter will be heard by a jury.

4. Length of Trial
The parties estimate that trial will take approximately 3 weeks.

5. Further Proceedings/Timing
The Plaintiffs have been informed that Mr. Theodore Russell, a witness on the Plaintiffs' list of trial witnesses, has relocated to Florida. Mr. anticipates that he will be in Florida during the time that this matter is exposed for trial and, therefore, requests two weeks advance notice to make arrangements for travel and accommodations.

The Defendants expect to move for summary judgment on the claims of Theodore Russell since he was not represented in his individual capacity. Certain of the Defendants expect to seek summary judgment on the basis that they never provided any representation to either Plaintiff. Plaintiffs expect to oppose this motion as the matter is ready for trial.

Depending on the disclosure of expert witness reports and the deposition of the expert it is possible that a motion for summary judgment may be filed if there is insufficient expert

testimony to support one or more of the Plaintiffs' claims. Plaintiffs expect to oppose this motion as the matter is ready for trial.

The Defendants anticipate filing a motion to disqualify counsel for the plaintiff because they anticipate that at least Attorney Robacynski will likely be witnesses at trial as to the issue of the negotiations with the Connecticut Dept. of Banking before the consent decree was entered into and the nature of the State's claims against Corlogix. (There are a number of factual issues concerning actions taken by the plaintiff independent of what the defendants allegedly did, that caused the State to prosecute Corlogix, as a result this is an important, highly relevant area of inquiry). The need to file this motion is based upon documents requested under the Freedom of Information Act in July of 2004, but not received until mid-to-late November 2005 from the Connecticut Department of Banking, as well as what is contained in additional documents that have been withheld by the Department on various grounds of statutory privilege under the Freedom of Information Act. While the State has supplied many documents, an additional 135 were withheld on various grounds of statutory privilege. Others that were disclosed were redacted. The descriptions of some of the withheld documents also appear to bear on this issue. Plaintiffs expect to oppose this motion based in part on the frivolous and speculative nature of a motion based on undisclosed documents and information.

6. Nature of Case
The lead action was filed in Federal Court pursuant to 28 U.S.C. § 1332 on July 20, 2000 and is based on complete diversity of citizenship and an amount in controversy in excess of $75,000.00 (hereinafter "Lead Action"). The operative complaint is the First Amended Complaint dated October 12, 2000. The second action was filed as an adversary proceeding in the United States Bankruptcy Court on January 16, 2002 pursuant to Sections 28 U.S.C.(a) and (b) and Sections 157 (a) and (b) (hereinafter "Adversary Proceeding"). The Lead Action and Adversary Proceeding were consolidated by Order dated January 6, 2003, effective December 19, 2002 (hereinafter collectively "Consolidated Cases").

In the Consolidated Cases, Corlogix claims that the defendants breached their contract to perform legal services and committed legal malpractice relating to the Connecticut Securities Law and Business Opportunity Investment Act, and the Uniform Securities Act, C.G.S. Sec. 36b-1 et seq. (hereinafter the "Connecticut Acts"), by failing to: adequately Blue Sky approximately $4.6 million in three-year promissory notes and warrants; properly disclose and register the three-year notes and warrants as securities in the various states; advise or warn plaintiffs that the three-year notes and warrants which were offered to investors could be reasonably construed as securities requiring either exemption or registration in advance of sale with the appropriate federal and state regulatory agencies, including those in Connecticut; investigate the securities compliance history of the surety involved in guaranteeing the three-year promissory note and ensuring their registration; and by preparing a private placement memorandum that was deficient. Additionally, Corlogix claims that defendants breached their fiduciary duty to Corlogix by making false representations relating to being licensed in the jurisdictions

where exemption, registration or regulatory filings relating to the Three-Year Notes and Warrants were to be made and by falsely denying ever having represented Corlogix in the preparation and use of the three-year note private placement memorandum; and by turning over incomplete files to Connecticut legal counsel. It is alleged that Asher Levitsky was General Counsel and Secretary to Cortronic Corporation, a predecessor to Corlogix Corporation, with Russell as Chief Executive Officer. It is further alleged that when Cortronic Corporation failed, Asher Levitsky through the law firm of Esanu, Katsky, Korins and Siger, L.L.P. continued to represent Russell and received stock options in a new enterprise, Cor-Medical Corporation. As a result of this long-standing legal relationship and close personal contact with Russell dating back too as early as 1989, the defendants were retained by Corlogix to bring Corlogix into compliance with applicable securities laws, including those of Connecticut, and to create a new securities offering to be issued from Connecticut to replace an earlier offering. This work included drafting a private placement memorandum for Corlogix' use. While Asher Levitsky was the attorney/firm primarily responsible for representing Russell and Corlogix in their securities offering ,he farmed out some of Corlogix's legal work to defendants Esanu Katsky Korin & Siger, LLP ("Esanu") and Attorney Eric Kamisher, "of counsel' to Esanu. All securities filings and billings were performed through Esanu and Levitsky is "of counsel" to Esanu.

In the Adversary Proceeding, it is also alleged that Esanu and Levitsky made negligent or fraudulent misrepresentations to Corlogix regarding being retained to make regulatory filings in the State of Connecticut. It is further alleged that there was fraud as to the estate because the defendants invoiced Corlogix for legal services that defendants now claim were never preformed in an attempt to avoid the malpractice claims and Corlogix paid for these services. Lastly, the Adversary Proceeding claims that the individual named partners in Esanu were negligent in their supervision of Levitsky, Weiss and Kamisher.

As a result of the defendants' breach of contract, legal malpractice and other misconduct, Corlogix Corporation and Russell (1) have inadequate funding; (2) are in receivership in Connecticut through an action brought by the Connecticut Department of Banking, Securities Enforcement Division; (3) are being sued by the New York Attorney General seeking injunction, restitution and damages under the Martin Act; (4) have defaulted in paying the Three-Year Notes; (5) have additional fees and expenses associated with the placement of the Three-Year Notes; (6) are experiencing continuing state regulatory investigations, cease and desist orders and enforcement actions including one by the Connecticut Department of Banking, Securities Enforcement Division, and the costs of defending the same; (7) face the prospect for imminent liquidation of Corlogix and loss of employment of Russell; (8) are facing fines, penalties, restitution, refunds, damages, costs and interest; (9) are experiencing loss of business revenues as projected in their business plan; (10) are experiencing loss of business and personal reputation; (11) are facing the loss of the technology; (12) are facing the potential loss of ownership and control over the Company; (13) have paid substantial attorneys' fees in defending the Connecticut enforcement and receivership actions and in bringing this action; (14) have experienced negative, harmful and derogatory publicity, including adverse publicity on

NBC Dateline News, in addition to (15) having experienced injuries in the form of lost revenues, salaries and profits.

The defendants deny the plaintiffs' claims. The defendants never provided legal representation to Theodore Russell individually. Certain of the named defendants provided limited representation to Corlogix, while other named defendants played no role in that representation. All of the legal representation provided to Corlogix by attorneys at Esanu, Katsky, Korins & Seiger, LLP met the appropriate standard of practice.

7. Trial by Magistrate Judge
Counsel have not agreed to trial by a Magistrate Judge.

8. Evidence

a. Witnesses
i. Plaintiffs' Anticipated Witnesses

1. Theodore Russell - The plaintiff will testify regarding the history of his relationship with defendants, the product development that Plaintiffs were undertaking, the problem plaintiffs encountered with a nine month promissory note, the retention of the defendants to undertake a guaranteed three-year promissory note financing program from Connecticut and the preparation of a Private Placement Memorandum and related documents, the various roles in preparing and reviewing documents and the timing of matters, the offering and the problems he encountered with the Connecticut Department of Banking, the receivership and bankruptcy of Corlogix Corporation, his loss of employment. He will also testify about his damages.

2. Ralph Lambiasi - Mr. Lambiasi will testify regarding the role of the Connecticut Department of Banking, Securities Enforcement Division, the failure of the defendants to register or seek exemption of the securities offering in Connecticut, the violations of Connecticut securities laws resulting from the three-year promissory notes and the Private Placement memorandum, and the actions and findings of the Connecticut Department of Banking, Securities Enforcement Division.

3. Asher Levitsky - the defendant will be examined regarding his previously friendly relationship with the plaintiffs, his relationship with and authority over his appointed subordinates and co-counsel, his relationship with the other defendants, his role in the securities offering, statements he made to plaintiffs regarding the legal work and securities filings, and his knowledge of and role in the adverse actions complained of.

4. Roy Korins - the defendant will be examined regarding the firms relationship with its partners and of counsel attorneys, the management of the firm, oversight committees and supervision of staff and attorneys and his knowledge of and role in the adverse actions complained of.

5. Eric Kamisher - Mr. Kamisher will testify regarding his relationship with the defendants, his role in the securities offering, supervision by the defendants, statements he made to plaintiffs and defendants regarding the legal work and the securities offering, and his knowledge of and role in the adverse actions complained of.

6. Jody Cranmore - Mr. Cranmore will testify regarding his role as Receiver.

7. John J. O'Neil, Jr. -Mr. O'Neil will testify regarding his role as Chapter 7 Bankruptcy Trustee.

8. Attorney John Beck - Mr. Beck will testify as to the standard of care for securities attorneys, and that defendants did not perform up to this standard of care with Corlogix' three-year securities offering and private placement memorandum.

9. The Plaintiffs reserve the right to call additional witnesses in rebuttal to Defendants' defense.

The Defendants intend object to any testimony from John Beck in that he has not been properly disclosed as an expert and a report was not disclosed. The defendants also object to the testimony of Ralph Lambiasi as described above in that it is in the form of opinion testimony and Ralph Lambiasi has not been disclosed as an expert in accordance with Federal Rule of Civil Procedure 26. The defendant has not been afforded the opportunity to depose either Mr. Lambiasi or Mr. Beck. This is the first time they have been disclosed as witnesses.

Plaintiffs disagree with Defendants' objections in that the matter has not been set down for trial and expert disclosure will be timely made. Plaintiffs further disagree with Defendants' mischaracterization of Mr. Lambiase's testimony as "expert" testimony. Mr. Lambiasi is a fact witness.

ii. Defendant's Anticipated Witnesses

Since discovery has not been completed in this matter the Defendants are not in a position to disclose a complete list of witnesses. Discovery has not been completed because this case was referred to parajudicial officer James R. Hawkins II in April of 2005. The initial conference was held in April of 2005 and a discovery order was discussed, but held in abeyance pending further settlement discussions. The last conference took place on June 29, 2005 and the discovery order was again held in abeyance pending further settlement discussions. Thereafter, in July further settlement negotiations. Those negotiations continued into August and discussions were outstanding at that time. No final conference was ever held to either complete the settlement discussions or to finalize the discovery order that had been discussed at the earlier conferences, despite a request by defense counsel to do so.

Based on the information available at this time the defendants will call the following witnesses:

Asher Levitsky – defendant- to testify as to the nature of his representation of Corlogix and his discussions with Ted Russell and the work surrounding Corligix. Also to testify as to the work he did to address regulatory actions brought as a result of the nine-month notes. To testify as to hi opinions regarding compliance with the standards of practice.

Eric Kamisher – attorney - to testify regarding his discussions with Asher Levitsky and Ted Russell regarding the private placement memorandum Ted Russell was drafting.

Joanne Arnold – paralegal- to testify as to work done to blue sky the notes signed by accredited investors

Joel S. Weiss – defendant- to testify as to the work he did regarding the work he did to address regulatory actions brought as a result of the nine month notes.

William Olesky – Conn. Department of Banking - to testify as to his conversations with Theodore Russell and counsel for Mr. Russell.

Theodore Russell – Plaintiff - to testify about legal the legal representation by the defendants and issues regarding damages and/or the agreements he reached with the State of Connecticut Department of Banking.

John Robacynski – attorney/witness- to testify as to the negotiations with the State of Connecticut and the nature of the violation that led to the consent decree with the State. The Defendant is not fully aware of the testimony that will be offered in that certain documents identifying such negotiations were withheld by the Department of Banking on privilege grounds in the recent disclosure in Mid to late November 2005. The Defendant intends to pursue those documents and may need to further amend this description once they are obtained.

The defendants intend to call one or more experts; however since discovery is not complete and the plaintiffs have not yet disclosed any experts in accordance with Rule 26 (a) (2) (B) and Rule 26 (a) (2) (C) the defendants are not in a position to identify experts other than as set forth above.

The Defendants reserve the right to call additional witnesses in rebuttal depending upon the testimony presented in the plaintiff' case in chief.

The Plaintiffs intend object to any testimony from John Robacynski in that he is trial counsel and Defendants failed to timely object to his continued and active participation as trial counsel from the inception of this matter in 1999 through the present.

b. Exhibits
i. Plaintiffs' Exhibits
Letter from Asher Levitsky soliciting venture capital for COR Medical Corporation dated April 29, 1993

May 17, 2999 Check Stub No. 1254 for $5,000.00 Retainer to Esanu, Katsky, Korins & Sigel;
E-mail from Asher Levitsky to Ted Russell on investor questionnaire dated June 18, 1999;

E-mail from Ted Russell to Asher Levitsky with Risk Factors dated June 21, 1999;
Letter from Asher Levitsky to Ted Russell dated June 22, 1999 with three-year note term sheet;
E-mail from Asher Levitsky to Ted Russell on term sheet dated June 22, 1999;
E-mail from Ted Russell to Asher Levitsky with Risk Factors dated June 23, 1999;
Walter Echman's term sheet dated June 24, 1999;
E-mail from Asher Levitsky to Ted Russell on state filings dated June 28, 1999;
E-mail from Asher Levitsky to Ted Russell on documentation dated June 28, 1999;
E-mail from Ted Russell to Asher Levitsky to on state filings dated June 28, 1999;
E-mail from Asher Levitsky to Ted Russell on filing in NY and CT dated June 28, 1999;
E-mail from Ted Russell to Asher Levitsky on CT filings dated June 29, 1999;
E-mail from Asher Levitsky to Ted Russell on CT investors dated June 29, 1999;
E-mail from Ted Russell to Asher Levitsky on receipt of 3 year funds dated June 29, 1999;
E-mail from Asher Levitsky to Ted Russell on CA investor dated June 29, 1999;
E-mail from Ted Russell to Asher Levitsky on subscription information dated June 29, 1999;
E-mail from Ted Russell to Asher Levitsky on Eckmans note dated June 30, 1999;
E-mail from Ted Russell to Asher Levitsky on CT dated June 30, 1999;
E-mail from Joanne Arnold to Ted Russell on NY filing dated June 30, 1999;
Corlogix June 30, 1999 Financial Statements;
E-mail from Asher Levitsky to Ted Russell on PPM templates dated July 1, 1999;
Letter from Ted Russell to Heinrich Reinstra dated July 1, 1999;
Comments by Asher Levitsky to draft letter from Ted Russell to Heinrich Reinstra dated July 1, 1999;
Letter from Joanne Arnold to Ted Russell dated July 1, 1999 with NY filing;

E-mail from Ted Russell to Asher Levitsky on private placement memos dated July 2, 1999;
Letter from Joanne Arnold to Ted Russell dated July 7, 1999 with NY filing;
E-mail from Asher Levitsky to Ted Russell on PPM templates dated July 9, 1999;
E-mail from Ted Russell to Asher Levitsky on PPM templates dated July 9, 1999;
E-mail from Asher Levitsky to Ted Russell on absence dated July 16, 1999;
Letter from Joanne Arnold to Ted Russell dated July 19, 1999 with NY filing;
Letter from Ted Russell to Asher Levitsky dated July 27, 1999 abridged PPM;
E-mail from Asher Levitsky to Ted Russell on stock resolution dated July 30, 1999;
Corlogix Five-Year Financial projections dated July 1999;
E-mail from Ted Russell to Asher Levitsky on option plan dated August 1, 1999;
E-mail from Asher Levitsky to Ted Russell on Delaware law dated August 2, 1999;
E-mail from Asher Levitsky to Ted Russell on nonqualified options dated August 2, 1999;

E-mail from Asher Levitsky to Ted Russell on PPM dated August 3, 1999;
E-mail from Ted Russell to Asher Levitsky on PPM dated August 3, 1999;
E-mail from Joanne Arnold to Ted Russell on PA registration dated August 5, 1999;
E-mail from Ted Russell to Asher Levitsky on PPM dated August 9, 1999;
E-mail from Asher Levitsky to Ted Russell on Kamisher working on PPM dated August 10, 1999;
E-mail from Asher Levitsky to Ted Russell on long term incentive plan dated August 10, 1999;
E-mail from Ted Russell to Asher Levitsky on long term incentive plan dated August 10, 1999;
E-mail from Ted Russell to Asher Levitsky on PPM priority dated August 10, 1999;
E-mail from Asher Levitsky to Ted Russell on his vacation plans dated August 12, 1999;
E-mail from Ted Russell to Joanne Arnold on Warrant and simple note dated August 13, 1999;
E-mail from Joanne Arnold to Ted Russell on Warrant dated August 13, 1999;
FAX of Warrant dated August 13, 2005;
E-mail from Asher Levitsky to Ted Russell on simple promissory note dated August 13, 1999;
E-mail from Joanne Arnold to Ted Russell on PA registration dated August 13, 1999;
E-mail from Ted Russell to Joanne Arnold on Warrant and simple note dated August 14, 1999;
Private Placement Memorandum dated August 30, 1999;
Three-Year Promissory Notes
E-mail from Asher Levitsky to Ted Russell on WI investigation dated September 2, 1999;
E-mail from Asher Levitsky to Ted Russell on list of noteholders dated September 3, 1999;
E-mail from Joanne Arnold to Ted Russell on PA registration dated September 7, 1999;
E-mail from Asher Levitsky to Ted Russell on WI investigation dated September 7, 1999;
E-mail from Ted Russell to Asher Levitsky on WI investigation dated September 7, 1999;
E-mail from Ted Russell to Asher Levitsky on WI investigation dated September 8, 1999;
E-mail from Asher Levitsky to Ted Russell on WI investigation dated September 8, 1999;
E-mail from Joanne Arnold to Ted Russell on WI investigation dated September 8, 1999;
E-mail from Asher Levitsky to Ted Russell on WI investigation dated September 9, 1999;
E-mail from Asher Levitsky to Ted Russell on letter revision for WI investigation dated September 9, 1999;
E-mail from Ted Russell to Asher Levitsky on WI investigation dated September 15, 1999;
E-mail from Joanne Arnold to Ted Russell on PA registration dated September 15, 1999;
E-mail from Ted Russell to Asher Levitsky on PPM re WI investigation dated September 16, 1999;
E-mail from Ted Russell to Asher Levitsky on consulting agreement dated September 16, 1999;
E-mail from Asher Levitsky to Ted Russell on consulting agreement dated September 21, 1999;
E-mail from Ted Russell to Asher Levitsky on consulting agreement dated September 22, 1999;

E-mail from Asher Levitsky to Ted Russell on WI investigation dated September 28, 1999;
E-mail from Asher Levitsky to Ted Russell on WI reply dated September 28, 1999;
E-mail from Ted Russell to Asher Levitsky on WI investigation dated September 28, 1999;
E-mail from Asher Levitsky to Ted Russell on SC registration dated September 29, 1999;
E-mail from Joanne Arnold to Ted Russell on PA registration dated September 29, 1999;
E-mail from Ted Russell to Asher Levitsky on WI reply dated September 29, 1999;
E-mail from Joanne Arnold to Ted Russell on consulting agreement dated September 30, 1999;
E-mail from Asher Levitsky to Ted Russell on WI reply dated September 30, 1999;
Letter from Asher Levitsky to Ted Russell dated September 30, 1999 with Consulting Agr.;
E-mail from Ted Russell to Joanne Arnold on consulting agreement dated October 3, 1999;
E-mail from Asher Levitsky to Ted Russell on note repayment dated October 5, 1999;
October 8, 1999 Esanu Invoice;
October 12, 1999 e-mail from Asher Levitsky to Ted Russell on $700.00 billing error;
E-mail from Joanne Arnold to Ted Russell on CA investigation dated October 15, 1999;
E-mail from Ted Russell to Asher Levitsky on NEIS dated October 18, 1999;
E-mail from Asher Levitsky to Ted Russell on NEIS dated October 18, 1999;
E-mail from Ted Russell to Asher Levitsky on 9 mo. note repayment dated October 19, 1999;
CT Department of Banking Subpoenas to Russell dated October 19, 1999;
CT Department of Banking Subpoenas to Corlogix dated October 19, 1999;
E-mail from Ted Russell to Asher Levitsky on CA investigation dated October 21, 1999;
E-mail from Joanne Arnold to Ted Russell on director of Corlogix dated October 21, 1999;
E-mail from Asher Levitsky to Ted Russell on PPM dated October 25, 1999;
E-mail from Ted Russell to Asher Levitsky on PPM dated October 26, 1999;
E-mail from Ted Russell to Asher Levitsky on CA investigation dated October 26, 1999;
E-mail from Ted Russell to Asher Levitsky on WI, MN and CT note repayment dated October 26, 1999;
E-mail from Asher Levitsky to Ted Russell on accredited investor dated October 26, 1999;
E-mail from Asher Levitsky to Ted Russell on CA investigation dated October 26, 1999;
E-mail from Asher Levitsky to Ted Russell on WI investigation dated October 27, 1999;
E-mail from Ted Russell to Asher Levitsky on CA note repayment dated October 27, 1999;
E-mail from Ted Russell to Asher Levitsky on WI investigation dated October 27, 1999;
E-mail from Ted Russell to Asher Levitsky on repayment dated October 28, 1999;
E-mail from Ted Russell to Asher Levitsky on NY move dated October 29, 1999;
November 2, 1999 Esanu Invoice;
E-mail from Ted Russell to Joanne Arnold on WI filing dated November 5, 1999;
E-mail from Asher Levitsky to Ted Russell on CA investigation dated November 8, 1999;

E-mail from Ted Russell to Asher Levitsky on NY move dated November 10, 1999;
E-mail from Asher Levitsky to Ted Russell on NY move dated November 10, 1999;
E-mail from Ted Russell to Asher Levitsky on NY move and CA Cease & Desist Order dated November 10, 1999;
E-mail from Ted Russell to Asher Levitsky on CA subpoena dated November 15, 1999;
E-mail from Asher Levitsky to Ted Russell on CA investigation dated November 15, 1999;
E-mail from Ted Russell to Joanne Arnold on name change dated November 15, 1999;
E-mail from Ted Russell to Asher Levitsky on CA investigation dated November 16, 1999;
E-mail from Asher Levitsky to Ted Russell on CA and WI investigations dated November 16, 1999;
E-mail from Asher Levitsky to Ted Russell on WI consent decree dated November 18, 1999;
E-mail from Ted Russell to Asher Levitsky on WI investigation dated November 23, 1999;
E-mail from Asher Levitsky to Ted Russell on WI investigation dated November 24, 1999;
December 13, 1999 Esanu Invoice;
E-mail from Asher Levitsky to Ted Russell on PPM dated December 29, 1999;
E-mail from Asher Levitsky to Ted Russell on name change and PPM dated December 29, 1999;
E-mail from Asher Levitsky to Ted Russell on PPM dated December 30, 1999;
E-mail from Asher Levitsky to Ted Russell on director dated January 6, 2000;
January 24, 2000 Esanu Invoice;
Letter from Asher Levitsky to Ted Russell dated February 2, 2000 with corporate documents;
E-mail from Asher Levitsky to Ted Russell on PPM dated February 8, 2000;
E-mail from Asher Levitsky to Ted Russell on PPM dated February 9, 2000;
CT Department of Banking Cease and Desist Order dated February 14, 2000;
E-mail from Asher Levitsky to Ted Russell on PPM dated February 15, 2000;
E-mail from Asher Levitsky to Ted Russell on name change dated February 15, 2000;
E-mail from Joel Weiss to Ted Russell on WI investigation dated February 16, 2000;
E-mail2 from Joel Weiss to Ted Russell with revised letter on WI investigation dated February 16, 2000;
E-mail from Asher Levitsky to Ted Russell on PPM financial statements dated February 23, 2000;
E-mail from Ted Russell to Asher Levitsky on acting CFO dated February 23, 1999;
E-mail from Asher Levitsky to Ted Russell on PPM financial statements dated February 27, 2000;
E-mail from Asher Levitsky to Ted Russell on PPM dated March 2, 2000;
E-mail from Asher Levitsky to Ted Russell on CT investigation dated March 2, 2000;
E-mail from Asher Levitsky copying Ted Russell on CT media relations dated March 2, 2000;
E-mail from Asher Levitsky to Ted Russell on CT investigation dated March 3, 2000;

E-mail from Asher Levitsky to Ted Russell on restated incorporation dated March 6, 2000;
E-mail from Asher Levitsky to Ted Russell on restated incorporation dated March 7, 2000;
Esanu Invoice dated March 8, 2000;
E-mail from Asher Levitsky to Ted Russell on PPM dated March 9, 2000;
QuickReport on payments to Esanu dated March 2000;
Receivership Summons, TRO, Order to Show Cause, Affidavit, Complaint and related pleadings by CT Department of Banking dated March 14, 2000;
Corlogix PPM dated April 15, 2000;
Balance Sheet, P&L Statement and Cash Flow dated 5-11-00;
Affidavit of Asher Levitsky dated January 22, 2001;
Corlogix post/mail records through August 31, 1999;
Corlogix telephone records April 1999 through February 2000;
Receivership Motion and Order dated December 26, 2000 authorizing filing of bankruptcy;
Deposition of Asher Levitsky dated May 15, 2001;
Prototype Evaluation Summary dated July 16, 2001;
Russell Employment Agreement;
Corlogix Chapter 11Bankruptcy Petition dated July 24, 2001
Bankruptcy Order authorizing employment of Gersten & Clifford dated August 7, 2001;
Bankruptcy Order converting case to Chapter 7 dated August 16, 2001;
Debtor-In-Possession Final Report dated October 1, 2001
Receivership Stipulation for Judgment dated January 29, 2002;
New York Martin Act Suit;
Pennsylvania Cease and Desist Order;
California Cease & Desist Order;
Wisconsin Order of Prohibition;
Minnesota Order;
Mississippi Cease & Desist Order;
South Carolina Notices;
Bankruptcy Claims Register
Patent Documents
New York State Bar Association Lawyers Code of Professional Responsibility

The Plaintiffs reserve the right to introduce exhibits in rebuttal depending upon the exhibits introduced in the Defendants defense some of which have not been disclosed to the Plaintiffs to date.

ii. Defendant's Exhibits

A. Esanu, Katsky, Korins & Siger LLP's legal file regarding the legal representation it provided to Corlogix, including the file documenting Blue Sky work completed for Corlogix

B. The entire Department of Banking File, including the correspondence between Attorneys from Gersten & Clifford and the Attorney General's office to negotiate the settlement reached with the Connecticut Department of Banking

C. Affidavit of William Olesky dated March 14, 2000

D. The pleadings in the case of <u>John P. Burke, Banking Commissioner v. Corlogic</u> – CV 00-0597049

E. Dec. 9, 1999 – Examination of Ted W. Russell

F. March 19, 2000 – Letter from Russell to Rienstra

The Defendants reserve the right to introduce exhibits in rebuttal depending upon the exhibits introduced in the Plaintiffs' case in chief some of which have not been disclosed to the defendants to date.

Plaintiffs' object to Exhibits that have not been adequately disclosed in A., B., and D. above.

9. Stipulations of Fact - None
a. Plaintiff's Facts
1. Corlogix Corporation is a Delaware Corporation with a principal place of business in Madison, Connecticut.
2. Theodore Russell is an individual residing in Madison, Connecticut.
3. Esanu Katsky Korins & Siger, LLP is a limited liability partnership organized under the laws of the State of New York with a place of business at 605 Third Avenue, New York, New York 10158.
4. Asher S. Levitsky P.C. is a New York professional corporation with a place of business in New York, New York.
5. Asher S. Levitsky, Randolph Amengual, Stephen D. Brodie, Adrienne B. Koch, Eugene V. Kokot, Roy M. Korins, Dennis C. Kreiger, Andrew B. Levine, Thomas M. Lopez, Gregory K. Marks, Jeffrey M. Siger, Stephen J. Swiatkiewicz, Meryl L. Unger, Marcy Wachtel, Mark Walfish, Joel S. Weiss and Elias M. Zuckerman are individuals and attorneys who are currently or were partners in and or attorneys working for Esanu.
6. Asher S. Levitsky is an attorney working for Asher S. Levitsky P.C. and, with Eric Kamisher, are or were "of counsel" to Esanu.
7. Roy Korins is Esanu's Executive Partner and head of Esanu's Corporate Department with responsibility for Department members including Asher levitsky and Eric Kamisher.
8. Asher Levitsky is not licensed to practice law in Connecticut.
In or about April, 1999, Russell contacted Asher Levitsky at Esanu for legal advice regarding his concerns about Corlogix's Nine-Month Notes.
9. In or about April, 1999, Russell contacted Levitsky and updated him on the formation of Corlogix, Russell's earlier injuries and his personal bankruptcy in 1995.
10. In or about April, 1999, Levitsky and Russell further discussed the regulatory

issues associated with Corlogix' Nine-Month Note financing and the possible solutions as well as involvement of NEIS.

11. In about May, 1999, Russell retained Esanu and Levitsky to bring Corlogix into compliance with any and all applicable securities laws.

12. In about May, 1999, provided to Levitsky many of the documents relating to Corlogix, NEIS and the Nine-Month Notes and a copy of Corlogix's Business Plan.

13. In early June, 1999, Russell sent to Esanu and Levitsky Five Thousand ($5,000.00) Dollars on retainer for the legal work.

14. On June 18, 1999, Levitsky provided Russell with a proposed investor subscription form and questionnaire.

15. Toward the end of June, 1999, Russell informed Levitsky that Bolen was going to jail.

16. On June 18, 1999, Russell met with Levitsky at his Esanu office in New York to discuss the options available to Russell and Corlogix.

17. On June 18, 1999, Levitsky opined to Russell that Corlogix could not use another nine-month note program to replace their current Nine-Month Notes because it would be perceived by securities regulators as a "Ponzi Scheme."

18. On June 18, 1999, Levitsky recommended to Russell that Corlogix offer three-year notes (the "Three-Year Notes").

19. On June 18, 1999, Levitsky agreed to utilize Esanu's resources and to prepare the necessary documentation and regulatory filings to qualify for a securities registration exemption.

20. On June 18, 1999, Levitsky advised Russell that by filing the Three-Year Notes under a regulatory exemption and making necessary Regulation D filings, Corlogix could use the capital generated from the Three-Year Notes to pay off investors in the Nine-Month Notes, thereby avoiding a "Ponzi Scheme" scenario and mitigating the regulatory consequences related to the Nine-Month Notes.

21. On June 18, 1999, Levitsky, Russell learned that Walter Eckmans, a potential Nine-Month Notes investor, was ready to make a loan to Corlogix and Levitsky advised Russell that Corlogix should accept Eckmans' money as Three-Year Notes financing.

22. On June 18, 1999, Levitsky advised Russell that so long as Eckmans qualified as an accredited investor, Corlogix need not provide Eckmans with a private placement memorandum but that Corlogix needed a private placement memorandum where nonaccredited investors were approached.

23. On June 18, 1999, Levitsky advised Russell that Corlogix would avoid any sales commission issues with the offering by utilizing short-term, fixed-fee consulting agreements with the financial planners and that a certified financial audit was necessary.

24. On June 18, 1999, Levitsky promised Russell that Levitsky and Esanu would be responsible for drafting the necessary documentation to complete the Eckmans transaction, including providing a Series A Common Stock Purchase Warrant ("Warrant"), and ensuring compliance with federal and state securities laws.

25. On June 18, 1999, Levitsky advised Russell that Levitsky and Esanu would draft documents for all future transactions and make all the necessary regulatory filings to ensure compliance with the securities laws.

26. On June 18, 1999, Levitsky agreed to assist Russell in preparing a private placement memorandum including review of the same.

27. On or about June 18, 1999, Levitsky used Esanu's resources to prepare the Eckmans transaction and prepare drafts of a subscription page, Warrant, investor questionnaire and the financial consultant's agreement.

28. On or about June 18, 1999, Russell provided Levitsky with relevant Corlogix corporate documents including its articles of incorporation, capitalization information and stockholder data.

29. On June 21, 1999, Eckmans invested Four Hundred Three Thousand Eight Hundred Eighty-Six Dollars and 05/100 Cents ($403,886.05) in Corlogix in Three-Year Notes usind the documents prepared by Levitsky.

30. On June 21, 1999, Russell sent to Levitsky a partial list of risk factors for use in drafting Corlogix's planned private placement memorandum for Levitsky to review and incorporate any changes necessary to be in compliance with the securities laws.

31. On June 22, 1999, Levitsky provided Russell with a Term Sheet to be used with investors subscribing to Corlogix's Three-Year Notes guaranteed by NEIS.

32. June 23, 1999, Russell contacted Levitsky seeking comment on the list of risk factors. Levitsky was unable to locate his copy and Russell again provided Levitsky with a second copy for Levitsky's review and comment.

33. On June 28, 1999, Levitsky advised Russell that he would have the securities documents prepared and filed with the securities regulators in New York and Connecticut.

34. On or about June 28, 1999, Russell provided Levitsky with the necessary information for the "Blue Sky" filings in New York and Connecticut.

35. As of June 30, 1999, Russell still had not received comment from Levitsky on the list of risk factors.

36. On July 1, 1999, Levitsky assisted Russell in drafting a letter requesting that NEIS extend its commitment of Nine-Month Notes with Warrants over to the planned Three-Year Notes Program.

37. On July 1, 1999, Levitsky informed Russell that the two PPM Templates being provided by Levitsky might not convert from "Word Perfect" to "Word."

38. Russell again contacted Levitsky on July 2, 1999, and Levitsky again promised to provide Russell the requested PPM Templates.

39. On or about July 9, 1999, Levitsky provided Russell with two PPM Templates in two word processing program languages from Esanu's files to assist Russell in preparing an initial draft of a private placement memorandum for Corlogix.

40. On or about July 9, 1999, Levitsky agreed that Russell would prepare the basic private placement memorandum using PPM Templates and Levitsky would review and finalize the document, ensuring compliance with federal and state securities laws, before being submitted by Levitsky to the various states requiring the necessary "Blue Sky" filings.

41. Levitsky knew that Russell and Corlogix needed immediate with the Three-Year Notes and the PPM in order for Corlogix to repay the Nine-Month Notes and avoid regulatory problems.

42. Beginning in July, 1999, Levitsky assumed responsibility for preparing and filing by Esanu Form D Notice of Sale of Securities with various states, including New York, relating to Corlogix's Three-Year Note financing program.

43.  In July, 1999, Levitsky provided Russell with a draft New York Form M-11 filing.
Russell corrected the financing amount on the form and reminded Levitsky of Russell's prior bankruptcy and the inclusion of Warrants in the financing.

44.  On July 8, 1999, Levitsky revised the Form M-11 and filed it on behalf of Russell and Corlogix. The Form M-11 disclosed that Russell had filed for Chapter 7 bankruptcy protection in 1995; however, Levitsky failed to include information concerning the Warrants.

45.  Following receipt of the PPM Templates from Levitsky, Russell utilized the templates and drafted a private placement memorandum including the draft risk factors.

46.  On August 3, 1999, Russell delivered this PPM First Draft to Levitsky for review and comment.

47.  On and after August 3, 1999, Russell provided Levitsky with individual change pages to the draft PPM as the document was worked and reworked by Russell.

48.  On or about August 9, 1999, Russell and Levitsky discussed the strategy of using a consulting agreement to avoid broker commission issues.

49.  On or about August 9, 1999, Levitsky advised Russell that Corlogix should change the financial planner's commissions to a fixed-fee consulting arrangement in order to make it comply with securities laws and informed Russell that while commissions were unacceptable from a regulatory standpoint, a consulting agreement would pass scrutiny.

50.  On or about August 9, 1999, Levitsky provided Russell with a consulting agreement to be utilized by Corlogix.

51.  In August, 1999, regulators from the states of Pennsylvania and Wisconsin contacted Russell regarding the sale of Corlogix's Notes and Levitsky, Weiss and Esanu represented Russell and Corlogix in responding to Pennsylvania and Wisconsin.

52.  On August 9, 1999, Russell requested Levitsky to continue to revise the draft private placement memorandum.

53.  On August 10, 1999, Levitsky informed Russell that Kamisher, another attorney at Esanu, was working with Levitsky on the private placement memorandum.

54.  On August 10, 1999, Russell advised Levitsky that his priority was working on the private placement memorandum.

55.  On August 12, 1999, Levitsky informed Russell that he was going on vacation for two weeks and that he personally would not be able to complete the private placement memorandum and that Kamisher would complete Corlogix's private placement memorandum.

56.  On August 13, 1999, Russell requested a draft Warrant to utilize with the Three-ear Note program and Levitsky the Warrant.

57.  On August 13, 1999, Levitsky provided Russell with a draft promissory note.

58.  Russell created a second draft of the private placement memorandum and delivered the same to Kamisher at Esanu on August 19, 1999.

59.  On August 20, 1999, Kamisher, discussed the PPM with Russell and promised Russell a finished private placement memorandum when he was back in the office in approximately one week.

60.  On August 26, 1999, Russell called Kamisher at Esanu's offices to finalize the

private placement memorandum and Kamisher informed Russell that he was satisfied with the PPM and that if he or Levitsky had any revisions, he would notify Russell by Monday, August 30, 1999.

61. Kamisher and Levitsky failed to notify Russell of any revisions by August 30, 1999 and Russell finalized the PPM on August 30, 1999.

62. On and after August 30, 1999, Russell distributed PPM to investors and potential investors in the Three-Year Notes program.

63. Following the August 30, 1999 finalization of the PPM, Levitsky utilized this PPM when making regulatory filings on behalf of Corlogix.

64. Levitsky and Kamisher failed to question the use of the Final PPM while making subsequent regulatory filings and responding to regulatory issues.

65. On October 19, 1999, Russell informed Levitsky that he had received sufficient Three-Year Notes money and commitments to repay all Nine-Month Notes.

66. Levitsky and Kamisher counseled Russell in preparing and utilizing the August 30, 1999, Final PPM and in offering and selling the Three-Year Notes and Warrants and in replacing the Nine-Month Notes.

67. Weiss advised Russell how to respond to the regulatory inquiries and issues.

68. Levitsky, Weiss, Kamisher and Esanu did not investigate NEIS's regulatory and securities compliance history.

69. On or about December 3, 1999, the Department of Banking for the State of Connecticut (the "Department") ordered Russell and Corlogix not to solicit any new Three-Year Notes and Warrants.

70. On or about December 3, 1999, Levitsky advised Russell not to use the August 30, 1999 PPM without making additional disclosures and including more extensive risk factors.

71. On or after December 3, 1999, Levitsky began revising the PPM.

72. On December 6, 1999, Levitsky provided Russell with a new draft of the risk factors.

73. On December 30, 1999, Levitsky provided Russell with a redraft of the PPM.

74. By December 31, 1999, Corlogix repaid approximately Five Million Dollars ($5,000,000.00) in Nine-Month Notes plus interest with funds generated by the Three-Year Notes.

75. The Department determined that the Three-Year Notes and Warrants were securities and issued Russell and Corlogix an Order to Cease and Desist, Notice of Intent to Fine and Notice of Right to Hearing dated February 19, 2000, asserting that 1) Corlogix and Russell violated C.G.S. Section 36b-16 by allegedly offering and selling promissory notes not registered with the State of Connecticut; 2) Corlogix and Russell violated C.G.S. Sec. 36b-4(a)(2) by allegedly failing to disclose to investors that the securities were not registered in the State of Connecticut; and 3) there were serious disclosure problems with the August 30, 1999, Final PPM, including materially misleading, misstatements and omissions of material facts.

76. On March 14, 2000, the Department initiated a separate action against Russell and Corlogix in Connecticut Superior Court seeking a receivership for Corlogix and a Temporary Restraining Order prohibiting Corlogix and Russell from, among other things, offering or selling promissory notes or securities of Corlogix. In this action the Department claimed that Corlogix and Russell 1) violated C.G.S. Sec. 36b-16 by

allegedly offering and selling promissory notes not registered with the State of Connecticut; and 2) violated C.G.S. Sec. 36b-4(a)(2) by allegedly failing to disclose to investors in the August 30, 1999, Final PPM that (a) the securities were not registered in the State of Connecticut, and (b) Russell had filed for personal bankruptcy in 1995. In addition to the injunction and receivership, the Department also sought to fine both Russell and Corlogix and require that they make restitution, plus interest, to all Three-Year Notes investors.

77.    On or about June 2, 2000, the Attorney General for the State of New York initiated an action against Corlogix and Russell under the Martin Act and the Executive Law seeking injunction, restitution, damages and costs, directly or indirectly, as a result of: (i) the failure by Levitsky to have Corlogix comply with the Martin Act's securities registration requirements, (ii) deception, (iii) misrepresentations, (iv) concealments, (v) suppressions, (vi) false pretenses, (vii) false promises, (viii) fictitious or pretended purchases or sales and (ix) other frauds specified in GBL Sec. 352(1) and 352-c in relation to the Three-Year Notes and Warrants.

Russell sent payments to Esanu and Levitsky totaling approximately Forty-Seven Thousand ($47,000) Dollars for legal representation based on invoices presented to Russell.

78.    Esanu and Levitsky hold Levitsky out a licensed securities attorneys and Esanu as an experienced securities firm.

79.    Corlogix Corporation was placed into receivership on August 14, 2000.

80.    A Chapter 11 voluntary bankruptcy petition was filed by Corlogix Corporation on July 27, 2001.

81.    On or about August 16, 2001, the United States Bankruptcy Court converted the Chapter 11 petition to a Chapter 7 petition and appointed John J. O'Neil, Jr., Trustee.

b. Contested Issues of Fact and Law

1. Plaintiffs' Contentions

The Plaintiff contends that Defendants were retained to prepare and review a Private Placement Memorandum and related documents for a Three-Year promissory note financing, "Blue Sky" the securities documents, supervise a securities offering and to make a filing with the securities regulators including those regulators in New York and Connecticut. The Plaintiffs contend that the Defendants failed to do this.

2. Defendant's Contentions

The Defendants contend that they met the standards of practice. That they did not represent Theodore Russell individually. That the majority of the named Defendants did no work in connection with this matter and are not properly parties to this litigation. The only named attorney Defendant who provided legal work with respect to the 3 year notes was Asher Levitsky. Joel Wiess addressed some of the regulatory actions brought against Corlogix as a result of the pre-existing 9 month note program; however it does not appear that the complaint contains allegation regarding that legal work.

The Defendants contend that Theodore Russell caused the losses suffered by Corlogix through his negligence in that he drafted false and misleading documents which he improperly used to solicit investors.

In addition the defendants claim that the Plaintiff's business losses were the result of poor business practices, an undeveloped product, a faulty product and too much high interest debt to allow the business to succeed.

10. Proposed Voir Dire
See attached list of proposed Voir Dire questions

11. Proposed Jury Instructions
See attached proposed Jury Instructions

12. Proposed Verdict Form
See attached proposed Verdict Form

13. Brief Description of Case and Parties
The Plaintiffs, Theodore Russell and Corlogix Corporation claim to have retained the Defendants to undertake a guaranteed three-year promissory note financing program from Connecticut and to prepare a Private Placement Memorandum and related documents and to register or seek exemption in all states where regulatory filings needed to be made, including Connecticut. Defendants failed to properly prepare the Private Placement Memorandum, Blue Sky the Warrants and to file with the Connecticut regulators. The Defendants deny all of the Plaintiffs' claims.

14. Anticipated Evidentiary Problems
The Plaintiffs anticipate evidentiary problems concerning the admission of Exhibits that Defendants failed to identify above.

The Defendants anticipate that based upon the Plaintiffs' exhibit list that there will be objections to the introduction of such exhibits on relevance grounds and authenticity grounds. The defendants also would oppose the introduction of testimony from any experts in that they have not been disclosed in accordance with Rule 26, the Defendants have not been furnished any expert witness reports to date. The defendants also object to any evidence of damages without a damage analysis as required by Rule 26 (a)(1)(B) or the documents required to be disclosed pursuant to 26(a)(1)(C).

PLAINTIFFS,

JURY INSTRUCTIONS

PLAINTIFF INSTRUCTION 1

Preliminary Cautionary Instructions

The law regarding this case is contained in the instructions I win give you. You must consider the Court's instructions as a whole. not picking out some instructions and disregarding others.

It is your duty to resolve this case by determining the facts and following the law given in the instructions. Your verdict must not be based upon speculation, prejudice, or sympathy. Each party, whether a professional corporation, partnership or an individual, should receive your same fair consideration.

You will decide what facts have been proven. Facts may be proven by evidence or reasonable inferences drawn from the evidence. Evidence consists of the testimony of witnesses and of exhibits admitted by the court. You should consider all the evidence without regard to which party produced it. You may use common sense gained from your experiences in life in evaluating what you see and hear during trial.

You are the only judges of the credibility of the witnesses. You will decide the weight to be given to the testimony of each of them. In evaluating the credibility of a witness you may consider that witness' ability and opportunity to observe, memory, manner, interest, bias, qualifications, experience, and any previous inconsistent statement or act by the witness concerning an issue important to the case.

An opening statement is what an attorney expects the evidence will be. A closing argument is given at the conclusion of the case and is a summary of what an attorney contends the evidence has shown. If any statement or argument of an attorney is not supported by the law or the evidence you should disregard that statement.
Given _____
Given as Modified _____
Refused _____
Withdrawn _____